## Leasure *versus* Union Mutual Life Insurance Co.

1. A foreign corporation may sue in the courts of this state to enforce the payment of a loan secured by mortgage on real estate in Pennsylvania.

2. *It seems*, however, that if a foreign corporation should resort to the remedy of ejectment to recover possession of the land, or become the purchaser at a sheriff's sale, a different question would arise.

October 29th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY and STERRETT, JJ.   PAXSON and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Westmoreland county*: Of October and November Term 1878, No. 318.

Scire facias sur mortgage by the Union Mutual Insurance Company of Maine against Lorin B. Leasure.

The Union Mutual Life Insurance Company of Maine is a company incorporated under the laws of that state.  Included in the charter a power was conferred on the company, amongst other powers, to loan money and secure the payment of it by taking mortgages.  Under this power the company loaned to the defendant Leasure $4500, and to secure its payment took from him his mortgage dated 5th October 1875, on the defendant's land in Westmoreland county, Pa.

The mortgage was payable one year from date; the interest payable semi-annually at the rate of six per cent., and it contained the usual scire facias clause in case of default in payment of principal or interest.   The defendant pleaded payment and subsequently filed the following special plea:—

" That the plaintiff is a foreign corporation, incorporated, as alleged, by the legislature of the state of Maine.   That said corporation has no authority, under any Act of Assembly of the state of Pennsylvania, to loan money within the state of Pennsylvania and take mortgages for the payment of the same on real estate situate in the state of Pennsylvania.   He therefore prays judgment that the said mortgage is void and no recovery can be had against the defendant in this action."

On the trial the question as to the right of the plaintiff to make the loan and maintain this action was reserved, and the jury instructed to find for plaintiff, and a verdict for $5425.12 was entered accordingly.   After argument judgment was entered for the plaintiff on the question reserved.

This action was assigned for error by defendant, who took this writ.

*Foster & Markle*, for plaintiff in error.—The company acquired the right to insure property in this state under the Act of April 11th 1868, Pamph. L. 89.   That act was designed to establish a

[Leasure *v.* Union Mutual Life Ins. Co.]

complete system, under which alone such a company incorporated in another state could do business in Pennsylvania: Thorne *v.* Travellers Ins. Co., 30 P. F. Smith 15.

To sustain the position of the plaintiff, it must be shown that there is a law of Pennsylvania conferring on the company the right to loan money and take mortgages.

The Act of 26th April 1855, expressly forbids corporations other than such as shall have been incorporated under the laws of this state, or any foreign government, potentate or power from acquiring and holding any real estate within this Commonwealth, directly in their corporate name, or by or through any trustee or other device whatsoever, unless specially authorized to hold such property by the laws of this Commonwealth: Purd. Dig. pp. 391–2, pl. 56.

The power to grant life insurance policies is one thing, and the right of a foreign corporation to transact business in their corporate name without authority of law, when the companies incorporated under our own laws could not do it, is another. If this power is recognised by this court it will be difficult to tell to what limit it may be carried or for what purposes used. Foreign capital may be withdrawn from the reach of the taxing power of this Commonwealth, and revenues which ought to belong to this state will go to another state.

*Edgar Cowan*, for defendant in error.—A corporation of one state may sue in the courts of another. If it may sue, why may it not make a contract? The right to sue is one of the powers it derives from its charter. If the courts of another country take notice of its existence as a corporation, so far as to allow it to maintain a suit and exercise that power, why should not its existence be recognised for other purposes, and the corporation permitted to exercise another power, which is given to it by the same law and the same sovereignty, when the last-mentioned power does not come in conflict with the interest or policy of the state?

Here the plaintiff had power to lend money and secure it by mortgage. The exercise of this power is not forbidden in Pennsylvania, either by policy or statute, and the right to sue here becomes undoubted by the comity of nations, and especially by the comity of the states of the union. As well might the plaintiff in error contest the right of a citizen of Maine to recover a just debt as to attempt to avoid this mortgage. The morality of the one is as obnoxious as the other. " One who has enjoyed the fruits of his contract with a corporation cannot set up that it was *ultra vires :*" Oil Creek & Allegheny Railroad Co. *v.* Pennsylvania Transportation Co., 2 Norris 160.

The judgment of the Supreme Court was entered, November 10th 1879,

[Leasure *v.* Union Mut. Life Ins. Co.]

PER CURIAM.—That a foreign corporation can contract with a citizen of this state, and enforce the contract by suit in the courts, has never been controverted: Bank of Augusta *v.* Earle, 13 Pet. 519. By the common law, alien friends could always sue, and there is no distinction in this respect between natural and artificial persons. Why, then, may not the performance of such a contract be secured by a mortgage as well as a judgment? Both are merely liens. It is true that a mortgagee can bring ejectment and recover possession of the land. Should a foreign corporation resort to this remedy, or become the purchaser at sheriff's sale, a different question would arise. But that even could not release the debt or destroy the validity of the title, except as against the Commonwealth. The Commonwealth indeed might enforce its claim by virtue of the Statutes of Mortmain: Leazure *v.* Hillegas, 7 S. & R. 320; but the grantor or mortgagor could not set up that as a defence against his own conveyance or mortgage.

Judgment affirmed.