New York and Scranton Construction Company to use *v.* Winton, Appellant.

208   467
p227  626

*Mortgage—Contract—Payment—Evidence.*

On a scire facias sur mortgage it appeared that the mortgagor, the owner of coal land, entered into an agreement in writing to borrow from the mortgagee a large sum of money to enable the mortgagor to develop his coal and prepare it for delivery to the mortgagee who was to purchase it. It was provided in the agreement that the money so loaned should be repaid "until the whole and entire amount of the money so as aforesaid loaned together with the interest thereon shall have been fully paid." The bond and mortgage also provided that the money should be repaid. The bond provided that the money was " to be repaid at the rate of fifteen cents for each ton of coal delivered to the obligee, its successors or assigns at and when the payments are agreed to be made for coal delivered until the whole sum advanced shall be fully repaid to the obligee by the obligor together with interest as aforesaid." Before the loan was repaid from the fifteen cents for each ton of coal delivered to the mortgagee, the merchantable coal became exhausted. *Held,* that the mortgagee was entitled to have the balance of the loan paid in cash.

*Corporations—Foreign corporations—Doing business—Mortgage.*

A corporation chartered in another state for the purpose of constructing railroads and of mining and transporting coal and other minerals may maintain a scire facias sur mortgage in this state, although the land covered by the mortgage was coal land, and the money was a loan to the mortgagor for the purpose of developing the coal and selling it to the mortgagee. In

such a case the foreign corporation is not doing business within the meaning of the foreign corporations registration act of April 22, 1874.

Argued Feb. 23, 1904.   Appeal, No. 22, Jan. T., 1904, by defendant, from judgment of C. P. Lackawanna Co., Nov. T., 1896, No. 48, on verdict for plaintiff in case of New York and Scranton Construction Company to use of the Continental Trust Company of the City of New York v. B. M. Winton, Administrator of W. W. Winton, Deceased.   Before DEAN, BROWN, MESTREZAT, POTTER and THOMPSON, JJ.   Affirmed.

Scire facias sur mortgage.   Before EDWARDS, P. J.

The facts are stated in the opinion of the Supreme Court.

The court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $98,603.67.   Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*I. H. Burns* and *M. J. Martin*, for appellant, cited on the question of the right of the foreign corporation to maintain the action: Delaware River Quarry, etc., Co. v. Bethlehem, etc., R. R. Co., 204 Pa. 22; Thorne v. Ins. Co., 80 Pa. 15; Holt v. Green, 73 Pa. 198; Allegheny v. Millville, etc., Ry. Co., 159 Pa. 411; United States Bank v. Owens, 27 U. S. 527.

*Everett Warren*, of *Willard, Warren & Knapp*, for appellee, cited as to the right of plaintiff to maintain the suit: Van Steuben v. Central R. R. Co., 178 Pa. 367; Augusta Bank v. Earle, 38 U. S. 519; Paul v. Virginia, 75 U. S. 168; Henrietta Mining, etc., Co. v. Johnson, 173 U. S. 221 (19 Sup. Ct. Repr. 402); Delaware River Quarry, etc., Co. v. Bethlehem, etc., R. R. Co., 204 Pa. 22; Fowler v. Scully, 72 Pa. 456; Nat. Bank v. Matthews, 98 U. S. 621; Nat. Bank v. Whitney, 103 U. S. 99; Jacksonville, etc., Ry. & Nav. Co. v. Hooper, 160 U. S. 514 (16 Sup. Ct. Repr. 379); Lynderborough Glass Co. v. Mass. Glass Co., 111 Mass. 315; Moss v. Averell, 10 N. Y. 449; Brown v. Winnisimmet Co., 93 Mass. 326; Bosshardt & Wilson Co. v. Crescent Oil Co., 171 Pa. 109; Wright v. Pipe Line Co., 101 Pa. 204.

OPINION BY MR. JUSTICE MESTREZAT, March 21, 1904:

The defendant's intestate executed and delivered to the New York & Scranton Construction Company, a New York corporation, a mortgage dated October 3, 1882, on his undivided one half interest in fourteen hundred acres of land in Lackawanna county, this state. The mortgage was given to secure a bond of even date between the same parties conditioned for the payment of $75,000 or so much thereof as should be advanced to the mortgagor for the purpose of opening and developing the coal in the mortgaged premises, which was to be mined by the mortgagor and delivered by him to the mortgagee on the terms and conditions set forth in two certain agreements between the parties. The money to be advanced was, as set forth in the bond, " to be repaid at the rate of fifteen cents for each ton of coal delivered to the obligee, its successors or assigns, at and when the payments are agreed to be made for coal delivered until the whole sum advanced shall be fully repaid to the obligee by the obligor, together with interest as aforesaid." The bond and mortgage contained the usual default clause by which the whole principal sum became due and payable on failure for sixty days to pay any instalment of principal or interest after the same became due. Prior to the date of the mortgage, the owners of the land had made an amicable partition of it " for the purpose of working said coal only." The last shipment of coal was made from the colliery early in January, 1894, when all the merchantable coal in Winton's half of the premises was exhausted.

This action was a scire facias on the mortgage issued September 23, 1896, by the mortgagee to the use of the Continental Trust Company, also a foreign corporation. On the trial of the cause it appeared that the money had been advanced to the mortgagor at various times from February, 1882, to November, 1885, which with interest, less the payments made by the mortgagor, aggregated the sum of $98,603.67, for which the learned trial judge directed the jury to return a verdict in favor of the plaintiff. A judgment was entered on the verdict and the defendant has appealed.

The assignments of error are numerous, but those not included in the three propositions on which the appellant has submitted the case may be considered as abandoned. The ap-

pellant contends (*a*) that under the agreement between the parties the mortgage was not to be paid in full in cash, but to be considered as paid in full when the mortgagee had received fifteen cents per ton on each ton of coal mined from the land; (*b*) that the plaintiff did not have such legal and constitutional right to do business in this state as would allow it to recover in this suit; and (*c*) that the court erred in giving binding instructions for the plaintiff.

We do not agree with the appellant that by the terms of the agreement the mortgage was to be considered paid when the mortgagee had received fifteen cents for each ton of coal mined from the land. The money was advanced in accordance with the terms of the agreement to enable the mortgagor to develop his coal and prepare it for delivery to the mortgagee, the purchaser. The original agreement provided " that the said party of the second part (mortgagee) shall loan to the said parties of the first part the sum of one hundred and fifty thousand dollars," and " that the amount of money so as aforesaid loaned by the party of the second part to said parties of the first part shall be repaid to the said party of the second part with lawful interest thereon . . . . until the whole and entire amount of the money so as aforesaid loaned together with the interest thereon shall have been fully paid." The bond and mortgage also provided that the whole sum advanced should be fully repaid, and that the mortgagor " shall until the payment of the whole principal and interest moneys secured by these presents " keep the buildings on the premises insured " as a further and collateral security for the payment of said moneys." It is clear, therefore, that the sum advanced to, and received by, the mortgagor, was a loan and was to be repaid in full to the creditor. The covenants of the mortgagor required him to mine and deliver the coal at his own expense. The breaker and other improvements at the colliery were to be constructed and paid for by him. The company had nothing to do with furnishing funds for these purposes. The agreement provided that the coal should be delivered to the company, and that it should receive the coal on board its cars at the colliery. There is, therefore, no reason why the company should not be reimbursed in full for the money it advanced to the mortgagor to make the improvements. If, as suggested by appellant's coun-

sel, the improvements were for the mutual benefit of both parties, the mortgagee pays for its share of the benefits in the price it pays for the coal. As the agreement required the mortgagor to erect the breaker at his own expense, it must be assumed that its cost with that of the other improvements was taken into account when the parties fixed the consideration the mortgagor was to receive for the coal. In this way the mortgagee makes full compensation for any benefits it derives from the improvements at the colliery.

If we understand the appellant's second position, he denies the right of the construction company, being a foreign corporation, to foreclose the mortgage because his indebtedness to the company was incurred while it was engaged " in the business of a common carrier and at the same time in the mining and transportation of coal in the state of Pennsylvania in violation of a statute and of the constitution." In this contention the appellant overlooks the fact, essential to sustain his position that the mortgage was not given to secure an indebtedness arising out of a transaction made unlawful by the appellee engaging in business contrary to a statute or to the state constitution. Concede that the appellee as a foreign corporation had no right to engage in the business set forth in its contract with the appellant, yet the fact is no defense to a recovery on the mortgage. This is not an action by the company to enforce the stipulations of the agreement between the parties nor to recover money due the company by the terms of the agreement. It is true that the agreement provides that the loan should be made to the appellant and for the specific purpose of improving the mining plant, but this suit was not instituted to enforce those covenants of the contract. This is a proceeding on a mortgage to compel the payment of a loan made by the company to Winton. It does not involve the validity of the contract between the parties relative to the coal operations or the right of the construction company to carry on the business of mining and transporting coal within this state. The suit is simply a scire facias on a mortgage given to secure a loan, and, therefore, it is no defense to the action that the plaintiff is a foreign corporation: Leasure v. Union Mutual Life Insurance Co., 91 Pa. 491. The construction company was not chartered to engage in the business of loaning money,

and when it made this loan, it was not " doing business " in contravention of the Act of April 22, 1874, P. L. 108. It was incorporated in the state of New Jersey for the purpose of constructing railroads and of mining and transporting coal and other minerals, etc. Had it employed its capital in carrying on this or any other business in this state, it would have brought itself within the prohibition of the statute. But the money sought to be recovered here was not invested or employed in this state in any business enterprise by the corporation. It was loaned to the appellant's decedent, a citizen of Pennsylvania, who employed it in his business for his own use and benefit. While a corporation can have no legal existence beyond the sovereignty creating it, yet our state has recognized the comity existing among the several states of the Union which permits a corporation of one state to sue in a foreign jurisdiction. The exercise of such power by a foreign corporation is not regarded as prejudicial to the interests of the state nor repugnant to its policy. What our constitution and the statute of 1874 prohibit is doing business in the state by a foreign corporation without having first complied with their provisions. We have already pointed out that the indebtedness attempted to be recovered here does not grow out of any business operations conducted or carried on by the appellee in this state.

We think the trial judge committed no error in giving binding instructions in favor of the appellee. Our view of the case eliminates the questions which the learned counsel for the appellant suggests should have been submitted for the determination of the jury. The coal in the land pledged in the mortgage was exhausted in 1894, and the last payment made by the appellant was in December of that year, nearly two years prior to the bringing of this suit. This default having been made, the balance of the principal with its interest became due and payable and authorized the issuing of the scire facias on the mortgage. At the trial the parties agreed on the amount of debt and interest yet unpaid on the plaintiff's claim, and the appellant's liability on the mortgage appearing from the uncontroverted facts in the case, the learned judge was justified in directing a verdict for the plaintiff.

The judgment is affirmed.