### In re MONTELLO BRICK WORKS.

(District Court, E. D. Pennsylvania. July 18, 1908.)

#### No. 2,922.

BANKRUPTCY—PROVABLE CLAIMS—CONTRACTS BY FOREIGN CORPORATIONS— FAILURE TO COMPLY WITH STATE LAW.

A Delaware corporation, whose principal business, which was authorized by its charter, was the acquiring of stock in other corporations and lending them money, which maintained its principal business in Pennsylvania, and there lent money to another corporation in which it owned a controlling interest, taking duebills therefor, was doing business in Pennsylvania, and where it failed to comply with the requirements of the state statute to entitle it to do business therein, such duebills are not legally enforceable and cannot be proved against the estate of the borrowing corporation in bankruptcy either by the lender or its assignee.

In Bankruptcy. On certificate from referee concerning claim of Colonial Trust Company, trustee.

Richmond L. Jones and Charles Henry Jones for Colonial Trust Company.

Wellington M. Bertolet, J. Howard Reber, and Duane, Morris, Heckscher & Roberts, for objecting creditors.

J. B. McPHERSON, District Judge. The question presented by this certificate is whether the referee erred in permitting the Colonial Trust Company of Reading to prove its claim against the bankrupt, and to vote upon it in the election for trustee. The claim rests upon certain duebills given by the bankrupt to the United States Brick Company, a Delaware corporation, for money loaned; these duebills having been assigned by the brick company to the trust company as collateral security for the bonds of the Delaware corporation, of which the trust company is the trustee under a formal indenture. Objection was made to the claim on two grounds, of which the first is that the right of the trust company is no better than the right of its assignor, the brick company, and that the latter corporation could not have had a valid claim upon the duebills because the money was loaned in violation of the Pennsylvania statutes, which forbid a foreign corporation to do business in the state until it has complied with certain definite requirements. It is conceded that the brick company did not comply with these statutes, and the question therefore is whether it was "doing business" in Pennsylvania when it loaned the money to the bankrupt. The following excerpts from the report of the referee will give the facts upon which his decision was based:

"The United States Brick Company was incorporated in Delaware about the middle of November, 1904.

"A certified copy under seal of the Secretary of State of Delaware of the certificate of incorporation of the United States Brick Company, which was

offered in evidence, shows the nature of its business and its objects and purposes. In brief, these purposes were: (a) To manufacture and sell brick tiles, etc., and all other articles of commerce made in whole or in part of clay, shale, silica, or other kindred substances; to purchase or acquire patents or licenses, and issue stock therefor; to purchase mines, manufactories, and other property necessary for its business, or the stock of any companies owning mines, etc., and any other property necessary for its business, and issue stock therefor; to issue bonds, certificates of indebtedness, notes, etc., and to sell the same; to guarantee payment of fixed charges or dividends of any corporation; to buy and hold, pledge, sell, or otherwise dispose of shares, bonds, certificates, notes, or other securities, obligations, or contracts of any corporation, etc., and to exercise the rights of stockholders as to stock purchased; to contract for the acquisition of real estate, stock, or securities either for money or for capital stock of the company; to leave, buy sell, mortgage, etc., real and personal property; to do all these things in any part of the world; (b) to manufacture, purchase, or otherwise acquire, to hold, own, mortgage, pledge, sell, assign and transfer, or otherwise dispose of, to invest, trade, deal in, and deal with goods, wares, merchandise, and property of every class and description; (c, d, e) to enter into, etc., contracts of every kind with any person, firm, or corporation, and take, make, accept, indorse, discount, execute, and issue promissory notes, bills of exchange, warrants, bonds, and other negotiable or transferable instruments.

"The United States Brick Company was composed almost entirely of residents of Berks and surrounding counties in Pennsylvania, and the greater part of its stock was held by these persons.

"It has an office in Wilmington, Del., which is used, together with a large number of other Delaware corporations, only for the purpose of holding annual meetings of stockholders.

"Under its charter it purchased nearly all of the stock of the Montello Brick Works, bankrupt, and a controlling interest in the stock of several other corporations in Pennsylvania and New York.

"This was practically all of its corporate purposes that it exercised either in this state or in any other, unless loans of money, to be referred to later, were an exercise of its corporate objects and purposes.

"It never engaged actively in the manufacture of brick or other clay products.

"It exercised its corporate objects chiefly in the acquisition of controlling interests in various companies actively engaged in the manufacture of brick and kindred products.

"Its meetings of directors were held in Philadelphia and Reading at the offices of the Montello Brick Works, the offices of the bankrupt.

"Its books were in the custody of its executive officers and clerks at said offices in Reading, Pa., and all the clerical work on these books was done there.

"It deposited its moneys in the First National and Penn National Banks and the Colonial Trust Company, all Reading banks.

"The United States Brick Company, by a deed of trust executed December 21, 1904, conveyed to the Colonial Trust Company of Reading, trustee for bondholders of the said United States Brick Company, all the stock of the Montello Brick Works that it held in order to secure the bonds issued. It also agreed in said deed of trust with the trustee to assign any evidences of indebtedness which it might receive from time to time from the Montello Brick Works for moneys advanced to it, also as collateral security for the bonds issued.

"The United States Brick Company at various times loaned money to the Montello Brick Works, for which it received duebills, 14 in number, all dated Reading, Pa., beginning with March 31, 1905, and ending with April 14, 1906, the total face value of which is $266,500, and the interest to December 10, 1907, is $37,724.67, making a total of $304,224.67. These duebills the United States Brick Company assigned by a series of assignments, each covering one or more of said duebills, to the Colonial Trust Company of Reading, Pa., as trustee for the brick company bondholders. These assignments covered a period from the 26th of August, 1905, to the 30th of April,

1906, and include all the duebills. The money advanced was deposited in Reading banks and drawn on by check, which were written and signed at the office of the company in Reading. Checks were delivered to the bankrupt in Reading and the duebills were received in Reading. In fact, each loan or advance of money was made in Reading, and the duebill received for each one was a Pennsylvania contract. I find, in short, that, excepting the incorporation of the United States Brick Company, and the signing of the deed of trust by the company at Wilmington, Del., nearly all the things that the United States Brick Company did were done in Pennsylvania, and these things no more than have been hereinbefore found.

"I do not find that the United States Brick Company did anything in Pennsylvania, excepting to obtain and exercise control of certain Pennsylvania corporations, including the bankrupt, and to lend money to the corporation whose stock it owned largely or in part.

"I further find as a fact, and it is admitted by the claimant, that the United States Brick Company never complied with the act of April 22, 1874, regulating certain duties of foreign corporations."

These facts are not disputed, and upon them the referee rested the conclusion that the brick company was not "doing business" in Pennsylvania, relying upon Construction Co. v. Winston, 208 Pa. 469, 57 Atl. 955, and holding that lending money was not the business of the brick company, and therefore that, as it did not exercise its corporate power in the state of Pennsylvania by making the loans in question, it did not fall within the provisions of the statutes. With this conclusion I am unable to agree. The brick company has an omnibus charter, under which it can do many things; but for present purposes it is enough to note that it was undoubtedly organized for the principal object of doing just what it proceeded to do, namely, to acquire the stock of the bankrupt, and to lend it money to carry on the operation of brickmaking under certain patents. This, in a few words, is the essential fact of the present controversy, and to state it is equivalent to drawing the conclusion. The Supreme Court of Pennsylvania and the Court of Appeals of the Third Circuit unite in deciding that, when a foreign corporation exercises its charter powers in the state, it is "doing business" therein, and that it cannot recover upon contracts made in the exercise of such powers, unless it has complied with the provisions of the Pennsylvania statutes concerning registration and other matters. As these duebills are the evidence of contracts made by the brick company in furtherance of the principal object for which it was incorporated, it follows inevitably (as I think) that it could not have recovered upon them in a suit against the bankrupt, and, as they are not negotiable instruments, it could not escape the consequence of its violation of the Pennsylvania law by the device of assigning them to the present claimant.

The decision of the referee is reversed.