This property the bankrupt agrees to lease for the term of three months for a total rental of $167.39, the net price. And then, entirely disregarding the printed provisions of the blank, it is declared, "Terms 30, 60 & 90 days." This cannot be wrested into anything but a sale for the price and upon the terms named, for failure to pay which as so provided the claimants are not entitled to get back the property, but must look to the estate like other creditors.

The petition in each case is dismissed, at the cost of the respective petitioners.

---

### In re MONTELLO BRICK WORKS.

(District Court, E. D. Pennsylvania. December 7, 1909.)

No. 2,922.

BANKRUPTCY (§ 318*)—FOREIGN CORPORATIONS—DOING BUSINESS IN VIOLATION OF LAW—VALIDITY OF CONTRACTS—CLAIMS.

Where duebills issued by a bankrupt corporation for money lent it by a foreign corporation were adjudged invalid in the hands of an assignee, and refused allowance against the bankrupt estate on the ground that in lending the money the foreign corporation was doing business in Pennsylvania without having registered as required by the state law, such corporation cannot prove the same indebtedness as a claim against the estate on the theory that, the duebills being void, the lender is entitled to recover on an implied contract as for money had and received; such contracts being equally within the statute.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 318.*]

In the matter of the Montello Brick Works, bankrupt. On certificate of referee concerning claim of United States Brick Company. Order disallowing claim affirmed.

See, also, 163 Fed. 624.

J. Howard Reber, Wellington M. Bertolet, and Duane, Morris & Heckscher, for creditors.

Harry F. Kantner, for trustee.

Isaac Hiester, for receiver United States Brick Co.

J. B. McPHERSON, District Judge. The facts out of which the present controversy arises are detailed in (D. C.) 163 Fed. 621, and in (C. C. A.) 172 Fed. 310, and need not be repeated now. It is enough to state, briefly, that these decisions rejected a claim presented by the Colonial Trust Company of Reading, the claim being founded on duebills that were given by the bankrupt to the United States Brick Company for money loaned, and were assigned by the brick company to the trust company as collateral security for certain bonds of the brick company for which the trust company was trustee under a formal deed. The brick company is a Delaware corporation and had not registered in

---

Pennsylvania as required by the laws of this commonwealth. Upon the facts disclosed by the testimony bearing upon the trust company's claim, it was held by the District Court that the brick company was "doing business" in Pennsylvania, and that the duebills were not legally enforceable either by the brick company or by the trust company, its assignee. This ruling was sustained by the Court of Appeals, whose decision was put distinctly upon the ground that the brick company in advancing the money and taking the securities was doing business in Pennsylvania; Judge Buffington saying on behalf of the court:

"If the Delaware company, in the advance of this money and the taking of these notes, was doing business in the state of Pennsylvania, the claim was rightly refused."

After stating and discussing the facts, the court concluded that the company was doing business within the commonwealth, giving the following reasons for this conclusion:

"It will thus appear this company was called into being to do local Pennsylvania work. It had no purpose to exercise its charter power elsewhere than in that state, and it made no effort or pretense so to do. Everything it did was a local act and in fulfillment of the local purpose for which it was created. Manifestly its sole purpose was to avoid the requirements of the Pennsylvania laws in the issue of bonds and doing the financing necessary to enable the local company to carry on the local operations. Indeed, it is clear it was a mere extra-Pennsylvania agency called into being and locally utilized by a local company for the purpose of doing local work. On the part of the Montello Brick Works, while it was a case of facit per alium, it was none the less a case of facit per se, and, viewed from the latter standpoint, it is clear that all its operations were, as they were at all times intended they should be, a doing of business in Pennsylvania. Judged from the intent of all parties concerned, and finding such intent emphasized by every proven act, we are clear the undoubted purpose of every one concerned was to have this company do business in Pennsylvania. Whatever its powers were to act elsewhere is quite apart from the present inquiry as to what it actually did in Pennsylvania. It is to be judged by the things it has done here, and not by those it has left undone elsewhere."

After the trust company's claim had been rejected by the District Court, insolvency proceedings were begun against the brick company, and a receiver was appointed on July 27, 1908; this being the date also on which the trust company's appeal from the rejection of its claim was allowed by the District Court. The receiver knew of the appeal, but made no effort to take part therein, although the argument was not had until March 23, 1909. Instead of becoming a party to that record, he waited until December 7, 1908, three days before the expiration of the year within which claims could be filed against the bankrupt estate of the Montello Brick Works, and then presented his claim as receiver, averring: That the Montello Company "was, at and before the filing of said petition (in bankruptcy), and still is, truly indebted to said (United States Brick Company) in the sum of $266,500, with lawful interest to the day of the date hereof; that the consideration of said debt is as follows: Money loaned from time to time between March 31, 1905, and April 14, 1906, amounting as above stated to $266,500, with lawful interest to the day of the date hereof." He also averred,

that the brick company "has not, nor has any person by its order, or to the knowledge or belief of said deponent, for its use, had or received any manner of security for said debt whatever, and that no note has been received for said debt"; but when he came to make proof of the claim (on September 17, 1909, after the decision of the Court of Appeals), it appeared that the transaction was precisely the same as had already been passed upon by the District Court, and that he had merely adopted a device to secure a second hearing in case the Court of Appeals should sustain the rejection of the claim that had been presented by the trust company. This is plainly shown by the offer of proof that was made by the receiver (Referee's Report, p. 26):

"On behalf of the claim of Robert Penington, receiver of the United States Brick Company, we offer in evidence proof of claim filed with the referee by the Colonial Trust Company upon an assignment of certain duebills executed by the Montello Brick Works and delivered to the United States Brick Company and by the United States Brick Company assigned to the Colonial Trust Company to be held under the terms of a deed of trust dated December 21, 1904, together with the original duebills described in said proof of claim and in the possession of the Colonial Trust Company and a copy of said deed of trust, and also all the proceedings relating to said proof of claim wherein said proof of claim was disallowed for the reason that the said transactions were a doing of business by the United States Brick Company, a Delaware corporation, in Pennsylvania without having complied with the act of April 22, 1874. Also proceedings in the Court of Chancery of Delaware and in the court of common pleas of Berks county whereby Robert Penington was appointed receiver of the United States Brick Company.

"We claim that, since an action does not lie upon the said duebills or upon the contract thereby evidenced or under which they were given, the present claim can be enforced to recover the moneys of the United States Brick Company had and received by the Montello Brick Works under said unenforceable contracts."

I do not think that much discussion is required to show that the claim cannot be maintained, and that the referee was right in rejecting it. As sufficiently appears, the Court of Appeals held the duebills to be unenforceable, because the brick company had been unlawfully doing business in Pennsylvania, and because the duebills had been given in the course of such business. The giving of the duebills was in itself a matter of no importance. They were mere pieces of paper, and if they had evidenced no other transaction than their own execution they would have been worthless against the creditors of the Montello Company. But (until the Pennsylvania statutes were invoked) they were not worthless. They represented loans of money, and it was this passing of actual cash that gave them value. Essentially therefore the trust company's claim was made upon these loans, of which the duebills were merely the evidences; and, when the duebills were declared invalid for the reasons already referred to, it was not the pieces of paper that were thus stigmatized, but it was the loans that lay behind them. Indeed, the duebills themselves contained no express promise to repay the loans. They simply declare that:

"There is due and payable to the United States Brick Company $——, for moneys advanced to this company by said United States Brick Company, with interest from this date."

In strictness therefore the claim of the trust company rested, not upon the express promise, but upon the implied promise, of the Montello Company, growing out of the fact that the brick company had advanced the money in question. As the claim of the receiver rests also upon the same implied promise, and upon nothing else, the question has been adjudicated, and the judgment binds the receiver as well as the brick company, because the brick company was in privity with the trust company, and the receiver has no higher right than his insolvent.

A few words more may perhaps be permitted in reference to the case of Delaware Construction Co. v. Pass. Ry. Co., 204 Pa. 22, 53 Atl. 533, cited by the Court of Appeals in support of its ruling. That decision is authority for the proposition that, since the brick company was doing business in Pennsylvania without having complied with the statutes relating to registration, no right of action would arise in its favor out of a loan of money made in the course of such business, whether the promise of repayment was express or implied. In the Delaware company's case it appeared that a foreign corporation came into Pennsylvania and did business here without registration, employing capital and laborers in building a railway—that being a business for which the company was chartered—and the court held that it could not recover from the railway company for labor and materials furnished during the progress of the work. The construction company had filed a creditor's bill to compel payment of its claim from the property of the railway company, and also from the uncollected subscriptions to its capital stock; and, although the bill did not aver an express contract (as appears from the opinion of Judge Scott in the court below) it did disclose, as a basis for the action, an implied contract to pay for the work and the materials furnished. But recovery even upon the implied contract was forbidden; the Supreme Court saying:

"The effect given by our decisions to the act of April 22, 1874 (P. L. 108) is to prohibit a recovery by a foreign corporation on a contract made in violation of the provisions of the statute. * * * This act has been liberally construed, and isolated transactions between a foreign corporation and citizens of this state have been held not to come within its prohibition, and only such corporations as have entered this state by their agents and prosecuted their ordinary business here have been considered as 'doing business' in violation of the act. * * * This subject, as well as that of the liability of the plaintiff to recover in a proceeding that discloses as its only basis the forbidden contract, * * * have been fully and ably discussed by the learned judge, and nothing can profitably be added to what is so well said in the opinion filed. * * * The purpose of the act is to bring foreign corporations doing business in this state within the reach of legal process. This purpose is not accomplished by a registration of the corporation at the pleasure of its officers, or when it may be to their interest to appeal to our courts. The act is for the protection of those with whom it does business or to whom it may incur liability by its wrongful acts, and nothing short of a registration before the contract that it seeks to enforce is made can give it a right of action. Any other construction of the act would violate its plain words and wholly defeat its object by affording protection to the corporation and denying it to the public."

Other reasons why the present claim cannot be successfully maintained are presented in the briefs of opposing counsel, but I do not

think they need be referred to. In my opinion the receiver's position should not be upheld. To allow it to succeed would result in nullifying the Pennsylvania statute. If the receiver's contention should prevail, a foreign corporation need pay no attention to the state law, for a promise to pay can always be implied from the doing of work or the advancing of money, and the corporation will be wholly indifferent whether it recovers on such a promise or on a contract that may happen to be express. The chief reliance of the receiver seems to be upon a metaphysical subtlety—that "where a contract is void, money paid under it may be recovered as money had and received, for the title does not pass." It is no doubt true that this refinement has sometimes been usefully employed to prevent an unconscionable result, but it has no place in such a situation as is now presented, where the public policy of a sovereign state has been violated—deliberately violated, as the Court of Appeals has declared—and the offender is seeking to escape the just consequences of his act. If the attempt under consideration should succeed, the statutes of Pennsylvania commanding the registration of foreign corporations will be a subject for derision, rather than for wholesome respect.

The referee's rejection of the claim is affirmed.